1  Kevin M. Welch (SBN: 254565)
   LAW OFFICE OF KEVIN M. WELCH
2  kevin@kmwlawoffice.com
   P.O. Box 494
3  Hermosa Beach, CA 90245
   Tel.: (310) 929-0553
4  Fax: (310) 698-1626

5  Attorney for the Plaintiff,
   KRAFTWORKS DESIGNS, INC.
6

7

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                    WESTERN DIVISION
11

12 | KRAFTWORKS DESIGNS, INC., a | Case No.: CV-11-00699 JHN (PJWx)
13 | California Corporation,
14 |         Plaintiff,           | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED**
15 | vs.
16 | LAWRIE MANTWELL, an individual;
   | KURT MANTWELL, an individual;
17 | KUMPLAY2 EVENTS, a California
   | Partnership; and DOES 1 through 10, | Hearing Date: August 8, 2011
18 | inclusive,                          | Time: 2:00 pm
19 |                                     | Courtroom: 790 Roybal
   |         Defendants.                 | Judge: Hon. Judge Jaqueline Nguyen
20

21

22                    **NOTICE OF MOTION**
23 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
24 NOTICE IS HEREBY GIVEN that on August 8, 2011, at 2:00 pm, or as soon
25 thereafter as counsel may be heard by the above-entitled Court, located at 255 East
26 Temple Street, Plaintiff KRAFTWORKS DESIGNS, INC. ("Kraftworks") will and
27 hereby does move the Court for summary judgment, pursuant to Fed. R. Civ. P. 56,
28

1  on the ground that there is no genuine issue as to any material fact and that
2  Kraftworks is entitled to judgment as a matter of law for the reason that
3  Defendants are intentionally infringing Kraftworks' federally registered trademark.
4  Pursuant to Local Rule 7-3, counsel for Plaintiff contacted counsel for Defendants
5  on July 11, 2011 and discussed the substance of this Motion.
6       This motion is based upon this Notice of Motion and Motion, the
7  accompanying Memorandum of Points and Authorities, and the declaration of
8  Doug Lewis, all pleadings and papers on file in this action, and upon other matters
9  as may be presented to the Court at the time of the hearing.

13  Dated: July 11, 2011    The Law Office of Kevin M. Welch

15  By: _____
16  Kevin M. Welch
    Attorney for Plaintiff
17  KRAFTWORKS DESIGNS, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Plaintiff Kraftworks respectfully requests that this Court summarily enjoin Defendants from further use of Defendants' trademark because it is highly similar to Plaintiff's federally registered trademark and it is used in conjunction with near identical services and marketed to an identical clientele through identical marketing channels and therefore will likely cause source confusion among consumers of Plaintiff's services. In Defendants' Answer and Counterclaim, Defendants admit to marketing near identical services to identical clientele through identical marketing channels in conjunction with a highly similar trademark but hold the misguided belief that despite their trademark's confusing similarity to Plaintiff's federally registered trademark, they have a legal right to use their mark because it is derived from the likeness of Defendant LAWRIE MANTWELL. This position has no basis in statute or case law, and therefore, Kraftworks respectfully requests that this Court summarily find that Defendants' trademark creates a likelihood of confusion and enjoin its further use.

## II. Statement of Facts

Plaintiff Kraftworks owns and operates a website, www.theswingsite.com, where adults who are interested in the swinger lifestyle may meet, converse, and become acquainted in a fun safe environment. (See Lewis Decl. ¶ 2). Kraftworks has been providing this service under its federally registered trademark, U.S. Trademark Registration No. 3348502 (hereinafter "the Kraftworks Mark"), which comprises a partial view of a female's face prominently featuring her eyes with the words "THE SWING SITE" above the female's eyes and the words "YOUR ADULT PLAYGROUND" and the web address "WWW.THESWINGSITE.COM" below the female's eyes. (See Lewis Decl. ¶ 3). Kraftworks has been using the Kraftworks Mark in commerce continuously since at least as early as May 5, 2005. (See Lewis Decl. ¶¶ 3, 4). Kraftworks also organizes and promotes private events

at a variety of locations where its members and guests can meet, converse, and become acquainted in person. (See Lewis Decl. ¶ 5). These events serve both as a benefit for members assuring continued patronage of the Kraftworks website and a marketing tool to meet new like-minded individuals -that may be interested in subscribing to the Kraftworks website. (See Lewis Decl. ¶ 6). Many of these private events are held at regular intervals and grow in popularity over time. (See Lewis Decl. ¶ 7). Defendants LAWRIE MANTWELL and KURT MANTWELL ("the Mantwells") were subscribers and frequent patrons of the Kraftworks website and private events until it was discovered that the Mantwells were receiving commissions to actively recruit patrons to leave the Kraftworks website and join competing websites. As a result of the Mantwells' behavior, Kraftworks made the decision to terminate the Mantwell's membership to its website and refund their membership fee. (See Lewis Decl. 8,9). The Mantwells continued attempting to appropriate Kraftworks' efforts and goodwill through parasitic business practices including launching a competing website *within hours of being terminated* that features a trademark that is highly similar to Kraftwork Mark comprising a partial view of a female's face prominently featuring her eyes (hereinafter "the Accused Mark"). (See Lewis Decl. ¶ 10). The timing is evidenced by the date on the letter communicating the termination and the date the Mantwells registered their competing website. (See Lewis Decl. ¶ 9,10). The Mantwells choose their trademark in bad faith with full knowledge and awareness of its similarity to the Kraftworks Mark as they had been members of the Kraftworks website and agreed to the terms and conditions which explicitly state that Kraftworks prohibits the unauthorized use of its trademarks. (See Lewis Decl. ¶ 11). Defendants' competing website, www.kumplay2.com, provides highly similar services to identical clientele. (See Lewis Decl. ¶ 12). Examples of the Defendants' use of the Accused Mark include the following:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT , OR IN THE ALTERNATIVE, TREATING SPECIFIED FACTS AS ESTABLISHED – Page 2**

- the Accused Mark was displayed in conjunction with advertising on the website, www.kumplay2.com, for an event where individuals and couples who are interested in the swinger lifestyle could "Meet & Greet," with a cover charge of $20 for couples and $15 dollars for singles that took place on July 18, 2010 (See Statement of Uncontroverted Facts ¶ 10, and Lewis Decl. ¶ 13);
- the Accused Mark was displayed in conjunction with advertising for a private dinner party with a cover charge of $20 dollars per person that took place on July 23, 2010 (See Statement of Uncontroverted Facts ¶ 11, and Lewis Decl. ¶ 14);
- the Accused Mark was displayed in conjunction with advertising for a "West Coast Swingers Corn Hole Tournament" with a cover charge of $5 per person that took place on September 4, 2010 (See Statement of Uncontroverted Facts ¶ 12, and Lewis Decl. ¶ 15);
- the Accused Mark was displayed in conjunction with advertising for a "total takeover" of an establishment located in Newport Beach on October 3, 2010 (See Statement of Uncontroverted Facts ¶ 13, and Lewis Decl. ¶ 16); and
- the Accused Mark was used on a banner displayed at a Halloween event that took place on October 30, 2010. (See Statement of Uncontroverted Facts ¶ 14, and Lewis Decl. ¶ 17).

In Defendants Answer to Plaintiff's First Amended Complaint, Defendants admitted to using the Accused Mark in conjunction with the citied advertisements rendering such facts uncontroverted. (See First Amended Complaint ¶¶ 32-36, Lawrie Mantwell and Kumplay2 Answer, and Kurt Mantwell Answer). Based on these uncontroverted facts, Plaintiff brings this Motion for Summary Judgment, or in the Alternative, for an Order Treating Specified Facts as Established.

## III. ARGUMENT

### 1. Legal Standard for Summary Judgment

Under Rule 56, a motion for summary judgment must be granted when "the pleadings, depositions, answers interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### 2. A Likelihood of Confusion can be Found on Summary Judgment

It is well established that a Court may summarily find a likelihood of confusion in instances where the requisite facts are not in dispute. The Sleekcraft Court adopted the following quote:

> "Whether likelihood of confusion is more a question of law or fact depends on the circumstances of each particular case. To the extent that the conclusion of the trial court is based solely upon disputed findings of fact, the appellate court must follow the conclusion of the trial court unless it finds the underlying facts to be clearly erroneous....*However, if the facts are not in dispute, the appellate Court is "in as good a position as the trial judge to determine the probability of confusion"* AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir.1979) quoting Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d (149) at 152, quoting Miles Shoes, Inc. v. R.H. Macy & Co., 199 F.2d 602 (2d Cir.1952). [Emphasis added].

While the Ninth Circuit reviews likelihood of confusion on appeal as a factual issue, this does "not preclude the district court from determining likelihood of confusion as a matter of law, either through dismissal or *summary judgment*." Murray v. Cable Nat. Broadcasting Co., 86 F.3d 858 (9th Cir. 1996).

A likelihood of confusion has been found on summary judgment several times in the Ninth Circuit. The following cases are cited as exemplar:

- Johnson & Johnson v. Diaz, 339 F. Supp. 60, 172 U.S.P.Q. 35 (C.D. Cal. 1971) (The Court determined on summary judgment that Johnson

Laboratories' use of the trademarks AQUA DE COLONIA, JOHNSON and JOHNSON LABORATORIES in conjunction with toilet water products would cause a likelihood of confusion with Johnson & Johnson, Inc.'s registered trademark JOHNSON AND JOHNSON used in conjunction with various toiletries);

- United States Jaycees v. San Francisco Junior Chamber of Commerce, 354 F. Supp. 61, 175 U.S.P.Q. 525 (N.D. Cal. 1972), aff'd, 513 F.2d 1226, 185 U.S.P.Q. 257 (9th Cir. 1975) (while noting the "judicial dislike of the disposition of complex trademark infringement and unfair competition cases through the use of summary proceedings," the Court granted summary judgment where no material fact was in dispute and the Court determined that there existed a likelihood of confusion between defendant's mark SFJCC and the San Francisco-Golden Gate Jaycees);

- E. & J. Gallo Winery v. Consorzio Del Gallo Nero, 782 F. Supp. 457, 20 U.S.P.Q.2d 1579 (N.D. Cal. 1991) (summary judgment for owner of strong trademark GALLO for wine, finding on summary judgment that GALLO NERO for wine is clearly an infringement);

- Dr. Ing. h.c.F. Porsche AG v. Universal Brass, 34 U.S.P.Q.2d 1593, 1995 WL 420816 (W.D. Wash. 1995) (summary judgment of likely confusion against unauthorized use of the PORSCHE marks on auto accessories);

- Conversive, Inc. v. Conversagent, Inc., 433 F. Supp. 2d 1079, 79 U.S.P.Q.2d 1284 (C.D. Cal. 2006) (Summary judgment was granted for Plaintiff upon a finding that there existed a likelihood of confusion between Plaintiff's trademark CONVERSANT and EASYAGENT and Defendant's trademark CONVERSAGENT, all used in conjunction with software);

- R & R Partners, Inc. v. Tovar, 447 F. Supp. 2d 1141, 82 U.S.P.Q.2d 1572 (D. Nev. 2006). (Summary judgment was granted to Plaintiff after an analysis of the Sleekcraft factors and a finding that there existed a likelihood of confusion between Plaintiff's mark, WHAT HAPPENS IN VEGAS STAYS HERE, and Defendant's slogan, WHAT HAPPENS IN VEGAS STAYS IN VEGAS.)

### 3. Kraftworks has a valid Federally Registered Trademark

The presence of a trademark registration discharges the plaintiff's original common law burden of proving validity in an infringement action. The presence of a registration shifts the burden to the defendant to prove the registered mark is invalid for some reason. Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778 (9th Cir. 2002).

Here, Kraftworks is the owner of United States Trademark registration No. 3348502 which comprises a partial view of a female's face prominently featuring her eyes with the words "THE SWING SITE" above the female's eyes and the words "YOUR ADULT PLAYGROUND" and the web address "WWW.THESWINGSITE.COM" below the female's eyes. The mark is registered in international class 045 for *Computer dating services; Dating services; Marriage partner introduction or dating services; On-line identity reliability investigation in the field of on-line dating and claims made about age, gender; Video dating services; Web site services featuring on-line dating club.* (See Lewis Decl. ¶ 3)

While Defendants' dispute the validity of this registration, they acknowledge its existence in their Counterclaim. (See Defendants' Counterclaim ¶ 2). Further, Defendants dispute is based in law and is not a dispute of the underlying facts. Specifically, Defendants dispute: 1) Whether or not the Kraftworks Mark is generic of the services Kraftworks provides (See Defendants Answer, Fourth Affirmative Defense); 2) Whether or not the Kraftworks Mark is Descriptive of the

services Kraftworks provides (See Defendants Answer, Third Affirmative Defense); and 3) Whether or not Defendants have a legal right to use the Accused Mark even if a likelihood of confusion exists because the Accused Mark is derived from the likeness of Defendant LAWRIE MANTWELL. These issues of law will be addressed individually below.

### a. Kraftworks Federally Registered Trademark is not Generic of the Services Kraftworks Provides

A Plaintiff alleging infringement of a federally-registered mark is entitled to a presumption that the mark is not generic. Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928 (9th Cir. 2005). Further, to properly be called an unprotectable "generic name" in trademark law, the designation must be the name of the same product or service provided. Many Courts utilize the "Who are you?-What are you?" test. In response to this question, those who provide competitive goods or services will give the same answer, regardless of source of origin.—e.g., computer modem, Hunan-style Chinese restaurant, Pilates exercise instruction services, sun block lotion. These common answers are generic terms. United States Jaycees v. San Francisco Junior Chamber of Commerce, 513 F.2d 1226, 185 U.S.P.Q. 257 (9th Cir. 1975). Test quoted in Surgicenters of America, Inc. v. Medical Dental Surgeries, Co., 601 F.2d 1011, 202 U.S.P.Q. 401 (9th Cir. 1979).

In the instant case, the Kraftwork Mark comprises a partial view of a female's face prominently featuring her eyes with the words "THE SWING SITE" above the female's eyes and the words "YOUR ADULT PLAYGROUND" and the web address "WWW.SWINGSITE.COM" below the female's eyes. (See Lewis Decl. ¶ 3) Defendants' do not dispute the description of the Kraftworks Mark or the service Kraftworks provides. Therefore, the issue is a legal question of whether providing the Kraftworks Mark would be an adequate and proper response if Kraftworks were asked the question "Who are you?" or What are you?

1  Kraftworks submits that when the Kraftworks Mark is viewed as a whole and
2  considered in its entirety, as the Supreme Court instructed is proper protocol in
3  what has become known as the anti-dissection rule, the Kraftworks Mark would
4  *not be a proper response.* <u>Estate of P. D. Beckwith, Inc. v. Commissioner of
5  Patents</u>, 40 S. Ct. 414 (1920). In fact, considering that the mark is partially
6  graphical, it would be a nonsensical answer to the questions. Therefore,
7  Kraftworks respectfully request that this Court find that the Kraftworks Mark is not
8  generic of the services Kraftworks provides.

       **b. <u>Kraftworks Federally Registered Trademark is not merely Descriptive of the Services Kraftworks Provides, or Alternatively has Acquired Distinctiveness Through Use in Commerce</u>**

13  A mark is merely descriptive if it directly and immediately conveys some
14  knowledge of the characteristics of a product or service. <u>In re MBNA America
15  Bank, N.A.</u>, 340 F.3d 1328 (Fed. Cir. 2003). The modern rational for denying
16  trademark protection for merely descriptive marks was stated by Judge Posner:

> "[I]t is no purpose of trademark protection to allow a firm to prevent its competitors from informing consumers about the attributes of the competitors' brands....To allow a firm to use as a trademark a generic word, or a descriptive word still understood by the consuming public to describe, would make it difficult for competitors to market their own brands of the same product."

20  In the instant case, the dominate feature of the Kraftworks Mark, the partial
21  view of a females face featuring her eyes, is not so descriptive of the services that
22  Kraftworks provides that Kraftworks' competitors would be unable or experience
23  difficulty in conveying to consumers the nature of their services if they were
24  required to use further differentiated marks. At most, the Kraftworks Mark is
25  suggestive of services of sexual nature, leaving Kraftworks competitors with a
26  myriad of non-confusing alternatives to distinguish their brand of services.

Further, the Kraftworks Mark was first used in commerce in conjunction with the services Kraftworks provides on May 5, 2005, over six years ago. (See Lewis Decl. ¶ 4). The Supreme Court explained that even descriptive marks may acquire distinctiveness which will allow them protection under the Lanham Act. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992).

As previously stated, Defendants do not dispute the description of the Kraftworks Mark or the services Kraftworks provides, thereby making the dispute a question of law ripe for summary adjudication. Kraftworks respectfully requests that this Court find that the Kraftworks Mark is distinctive, either inherently or through secondary meaning, and that the Kraftworks Mark is valid and enforceable.

### c. Defendants Do Not Have a Right to Use a Mark Merely Because it is Derived from Defendants' likeness

There is an important difference between the right of publicity and trademark rights. While every person inherently possesses a right of publicity (or privacy) in his or her likeness, every person does not inherently possess a trade or service mark in his or her name, picture, or other elements of their persona. Trade or service mark rights arise only if the name or picture is used as a trade or service mark to identify and distinguish the source of goods or services, and only if use of the name or picture is not confusingly similar with someone else's greater rights in a similar name or picture. See McCarthy, The Rights of Publicity and privacy 2d § 4:14 and Prior Exploitation 28:11.

Historically, there was a view within trademark law that everyone had a right to use their own name in conjunction with the goods and services they purveyed. If by analogy, Defendants' are arguing that, similarly, they have a right to use their own likeness, this argument must fail as well because as early as 1914 the Supreme Court moved away from this view stating that a junior user must take

precautions in the manner of use so as to not cause confusion with the senior any user. <u>Thaddeus Davids Co. v. Davids</u>, 233 U.S. 461, 472, 34 S. Ct. 648 (1914).

Defendants' belief that they have a right to use the Accused Mark regardless of consumer confusion because it is derived from the likeness of LAWRIE MANTWELL is a misguided legal position. Kraftworks respectfully request that this Court hold that the fact that Accused Mark is derived from the likeness of LAWRIE MANTWELL does not authorize Defendants to use such mark is commerce if such use creates consumer confusion.

### 1. Federal and Common Law Trademark Infringement

The Lanham Act imposes liability for infringement of a registered mark upon any person who uses an infringing mark in interstate commerce in connection with the sale *or advertising* of goods or services. Lanham Act §32(1), 15 U.S.C. §1114(1). Whether or not a likelihood of confusion exists is the dispositive inquiry in a Lanham Act case. <u>Workers v. Winship Green Nursing Ctr.</u>, 103 F.3d 196 (1st Cir. 1996). In determining whether there exists a likelihood of confusion, the Ninth Circuit employs an eight-factor test: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) likelihood of expansion of the products lines. <u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979). Each factor is explored in greater details below.

#### a. Strength of the Marks

The Kraftworks Mark is a federally registered mark used in commerce since at least as early May 5, 2005 and is widely recognized throughout the relevant consuming public, whereas Defendants' mark was first used as a trademark on or about June 7, 2010 after Kraftworks terminated the Mantwells' membership and the Mantwells purchased the domain www.Kumplay2.com. (See Lewis Decl. ¶ 4, 9). Kraftworks submits that this factor weighs in favor of a finding of a likelihood

1  of confusion and protecting the distinctiveness of Kraftworks' strong, federally-
2  registered trademark.

### b. Proximity of the Services

The services provided by both Defendants and Kraftworks are provided online and promoted through events held primarily in Southern California. In terms of proximity, the services are provided to the same community and are therefore highly proximate. (See Lewis Decl. ¶ 5,6,7). Kraftworks submits that this factor weighs heavily in favor of a finding of a likelihood of confusion.

### c. Similarity of the Marks

The degree of resemblance necessary to constitute a likelihood of confusion is incapable of exact general definition. However, it is very clear that, "exact similitude is not required" between the allegedly confusing marks. McLean v. Fleming, 96 U.S. 245, 24 L. Ed. 828 (1878). As the Supreme Court has stated, "It is not necessary to constitute an infringement that every word of a trademark would be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protectable article." Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 45 L. Ed. 60, 21 S. Ct. 7 (1900). Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are "open and shut" and do not involve protracted litigation to determine liability for trademark infringement. Wynn Oil Co. v. Thomas, 839 F.2d 1183, 5 U.S.P.Q.2d 1944, 1950 (6th Cir. 1988).

///
///
///
///
///
///
///

In the case at hand, the dominant feature of the Kraftworks Mark is the partial view of a female's face featuring her eyes. Defendants have virtually replicated and absconded with this feature creating a near-identical mark for use in conjunction with a directly competitive service. The following side-by-side comparison can convey the marked similarity better than any description.





### d. Evidence of Actual Confusion

Evidence of actual confusion is not necessary to find a likelihood of confusion. The Restatement Third of Unfair Competition cautions that, "No mechanistic formula or list can set forth in advance the variety of elements that comprise the market context from which likelihood of confusion must be determined." Restatement Third, Unfair Competition §21.

### e. Marketing Channels Used

The services provided by both Kraftworks and Defendants are marketed through the Internet to the same relevant consuming community, therefore the

marketing channels are identical. (See Lewis Decl. ¶¶ 2, 3, 10). This factor weighs heavily in favor of a likelihood of confusion.

### f. Type of Services and the Degree of Care Likely to be Exercised

In this market, it is not uncommon for consumers to attend events of competing service providers, therefore consumers may not be entirely aware of the sponsoring provider. Given the low degree of care many consumers exercise, it becomes more important that trademarks displayed at the various events and in conjunction with event advertising be distinguishable. Kraftworks submits that it is very likely that when consumers view the eyes featured in the Accused Mark they do not appreciate the subtle differences between the Accused Mark and the Kraftworks Marks and are likely to confuse the source or affiliation of the associated services. Kraftworks submits that this factor weighs in favor of a finding of a likelihood of confusion.

### g. Defendants' Intent in Selecting the Mark

As previously mentioned, the Mantwells were very aware of the Kraftworks Mark when they choose and began using the Accused Mark in commerce because the Mantwells had been members of the Kraftworks website and agreed to the Kraftworks terms and conditions which explicitly stated that Kraftworks' trademarks were not to be used without written permission. (See Lewis Decl. ¶¶ 8-10). Kraftworks submits that Defendants' use of a mark so highly similar when Defendants were aware of the Kraftworks Mark was completely intentional and in bad faith.

### h. Likelihood of Expansion of the Products Lines

The likelihood of expansion is a relevant factor when the competing goods or services differ to some degree, and a determination must be made whether the differences may converge in the future creating a greater risk of confusion than presently exists. Here, expansion cannot create a greater risk of consumer confusion because the services provided by Kraftworks and Defendants are

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, TREATING SPECIFIED FACTS AS ESTABLISHED – Page 13

1  virtually identical, thereby presently creating the greatest possible risk of
2  confusion. (See Lewis Decl. ¶¶ 2, 3, 12). Kraftworks submits that this factor
3  weighs in favor of a finding of a likelihood of confusion.

4  ### IV. Conclusion

5  Kraftworks respectfully requests that this Court find that the Kraftworks
6  Mark is valid and enforceable and that the majority of the Sleekcraft factors favor a
7  finding that Defendants' use of the Accused Mark creates a likelihood of confusion
8  among the consuming public and infringes the Kraftworks Mark. Further,
9  Kraftworks request that that this Court enjoin Defendants from further use of the
10 Accused mark, or in the alternative, for an order setting forth specified facts as
11 established.

13 Dated: July 11, 2011            The Law Office of Kevin M. Welch

15                                 By: _____
16                                 Kevin M. Welch
17                                 Attorney for Plaintiff
                                   KRAFTWORKS DESIGNS, INC.